**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FORD OF SLIDELL, LLC, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 21-858** |
| **STARR SURPLUS LINES INSURANCE CO.** | **SECTION: "G"** |

## ORDER

This litigation stems from a denial of insurance coverage for damages allegedly arising from the COVID-19 pandemic. Pending before the Court is Defendant Starr Surplus Lines Insurance Company's ("Starr") "Rule 12(b)(6) Motion to Dismiss."[1] Plaintiffs Ford of Slidell, LLC, Nissan of Slidell, LLC, Supreme Automotive Group, LLC, Supreme Chevrolet, LLC, Supreme Domestics, LLC, Supreme Imports, LLC, and Kramor of Plaquemine, LLC (collectively, "Plaintiffs") oppose the motion.[2] Considering the motion, the memoranda in support and in opposition, the arguments made at oral argument, the record, and the applicable law, the Court grants the motion.

## I. Background

### A.    *Factual Background*

In this litigation, Plaintiffs—several car dealerships in Louisiana—allege that on November 27, 2019, they entered into an all-risk commercial insurance policy (the "Policy") with Starr to cover the car dealerships and their business locations for "front-end sales, parts, service,

---

[1] Rec. Doc. 13.

[2] Rec. Doc. 15.

1

and body shop departments or services."[3] According to Plaintiffs, the Policy provided "coverage for business interruption, extra expenses, and civil authority losses" from November 27, 2019 through November 27, 2020.[4] During this time, Plaintiffs allegedly "paid the six-figure premium due which [Starr] happily accepted."[5] Plaintiffs allege that under the Policy, coverage extended to "all risks unless expressly excluded or limited by language in the body of the policy or through a separate exclusion endorsement."[6] Plaintiffs highlight two provisions of the Policy. First, the "business interruption" provision of the Policy provides for coverage in the case of "business interruption and any actual loss resulting from necessary interruption of Plaintiffs' normal business operations caused by direct physical loss or damage to real or personal property" (the "Business Interruption" provision). Second, the "extra expense" provision provides coverage for "expenses related to reducing loss, and for extra expenses" incurred following direct physical loss or damage of the properties (the "Extra Expense" provision).[7]

In March and April 2020, in response to the COVID-19 pandemic, "federal, state, and local authorities issued orders and guidelines for business[es] and people, that directly and indirectly applied to Plaintiffs" (the "Emergency Orders").[8] Plaintiffs alleged that due to the pandemic they "began suffering business interruption losses and extra expenses in March 2020."[9] Plaintiffs further claim that the COVID-19 virus was either present at the covered locations or

---

[3] Rec. Doc. 5 at 4.

[4] *Id.* at 4, 7.

[5] *Id.* at 7.

[6] *Id.* at 8.

[7] *Id.* at 8–10.

[8] *Id.* at 11–14.

[9] *Id.* at 14.

there was an "imminent risk of on-site viral presence" during the pandemic as evidenced by "the level and reach of the pandemic in Southeast Louisiana," and because employees working at the dealerships were diagnosed with COVID-19.[10] Plaintiffs aver that in response to the pandemic they "followed orders and guidelines to reduce the presence of the virus, including reducing working hours for non-essential personnel and for support staff, and limiting daily hours of operation, and controlling all work and business spaces so that there would be fewer people in all areas and departments" and "performed extensive cleaning and disinfecting of all premises."[11] Plaintiffs also acknowledge that their premises remained open during the COVID-19 pandemic because they were classified as essential businesses.[12]

Plaintiffs claim that during this time they suffered a loss of business income and extra expenses, which Plaintiffs allege should be covered under the terms of the Policy's Business Interruption and Extra Expenses provisions.[13] Nevertheless, Plaintiffs allege that Starr denied coverage, claiming that (i) the Policy's Pollution and Contamination Exclusion Clause (the "Contamination Clause") excludes coverage for Plaintiffs' claim; (ii) Plaintiffs had not suffered physical loss as required under the terms of the Policy; and (iii) Plaintiffs were not otherwise covered under the Policy, including under the Civil Authority provision and Ingress/Egress provision.[14] Plaintiffs contend that Starr's denial of coverage represents a breach of the Policy and a breach of the duty of good faith, as well as statutory duties of the insurer under Louisiana

---

[10] *Id.*

[11] *Id.* at 15.

[12] *Id.* at 14.

[13] *Id.* at 15, 17.

[14] *Id.* at 18–19.

law.[15] In addition to damages, Plaintiffs seek a judicial declaration as to its rights and Starr's obligations under the Policy.[16]

**B.      *Procedural Background***

On April 29, 2021, Plaintiffs filed a complaint in this Court, asserting diversity jurisdiction pursuant to Title 28, United States Code, Section 1332.[17] On May 10, 2021, Plaintiffs filed an amended complaint.[18]

On July 29, 2021, Starr filed the instant motion to dismiss.[19] Plaintiffs filed an opposition to the instant motion on August 17, 2021.[20] The Court held oral argument on the motion on August 25, 2021. On August 25, 2021, with leave of Court, Starr filed a reply brief in further support of the motion to dismiss.[21]

## II. Parties' Arguments

**A.      *Starr's Arguments in Support of the Motion to Dismiss***

Starr moves the Court to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Policy did not provide coverage for any of Plaintiffs' COVID-related losses. Starr makes two principal arguments: (i) Plaintiffs suffered no "direct physical loss or damage" as required for coverage, and (ii) Plaintiffs' claims were excluded from

---

[15] *Id.* at 21–24.

[16] *Id.* at 21, 24.

[17] Rec. Doc. 1.

[18] Rec. Doc. 5.

[19] Rec. Doc. 13.

[20] Rec. Doc. 15.

[21] Rec. Doc. 22.

coverage under the Policy's Contamination Clause.[22] Given that the Policy did not provide coverage for Plaintiffs' COVID-related losses, Starr contends that Plaintiffs' claims for bad faith claims processing necessarily fail.[23]

### 1.     Physical Loss or Damage

Starr first argues that Plaintiffs do not allege losses that are covered under the terms of the Policy.[24] Starr claims that the Policy unambiguously covers only "direct physical loss or damage" to property.[25] According to Starr, "direct physical loss or damage" requires a "distinct, demonstrable, physical alteration of the property" or "actual physical change or injury to the property."[26] Starr claims that Plaintiffs, in alluding to the presence of COVID-19 at their dealerships and the effect of the Emergency Orders on their business, have not stated a claim for "physical loss or damage" to the property such that they would be covered because "COVID damages people, not property."[27] Starr contends that Plaintiffs' attempt at broadening the definition of "direct physical loss" to include the possible presence of the virus and the implementation of the Emergency Orders has been "repeatedly rejected" by recent court decisions.[28]

Since Plaintiffs have failed to allege "direct physical loss or damage," Starr argues that

---

[22] Rec. Doc. 13.

[23] Rec. Doc. 13-1 at 24–25.

[24] *Id.* at 6.

[25] *Id.* at 6–8, 12–14, 17–21.

[26] *Id.* at 9–10.

[27] *Id.* at 9–10, 14.

[28] *Id.* at 14–17.

the Policy does not cover Plaintiffs' claims.[29] Starr alleges that the each provision cited by Plaintiffs—the Business Interruption provision, the Extra Expenses provision, the Civil Authority Provision, and the Ingress/Egress provision—require direct physical loss or damage.[30] Moreover, Starr claims that the Civil Authority Provision is inapplicable here because it only applies "where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."[31] Starr argues that Plaintiffs have failed to state a claim for such coverage in this case because the Emergency Orders were "preventative efforts to prevent the general spread of the COVID-19 virus, and not in response to any specific physical damage to property."[32]

### 2. Contamination Clause

Alternatively, Starr argues that even if this Court were to find that Plaintiffs had stated a claim for direct physical loss and were therefore covered under the Policy, the Policy's Contamination Clause precludes coverage.[33] Starr highlights the language of the Contamination Clause, which provides that there is no coverage for loss or damage resulting from "contamination."[34] Starr further highlights that the Policy defines "contaminants" to include a "virus," such as the COVID-19 virus.[35] Considering that Plaintiffs' claims "arise clearly and entirely from" the COVID-19 virus, Starr asserts that Plaintiffs' allegations fall squarely within

---

[29] *Id.* at 17.

[30] *Id.* at 18.

[31] *Id.* at 19.

[32] *Id.* at 19–21.

[33] *Id.* at 21.

[34] *Id.*

[35] *Id.*

the unambiguous provisions of the Contamination Exclusion" and are excluded from coverage.[36] Starr further clarifies that they have not and do not rely upon the "pollution exclusion" provision of the Policy.[37]

### B.    *Plaintiffs' Arguments in Opposition to the Motion to Dismiss*

In opposition, Plaintiffs dispute both of Starr's arguments for dismissal.

### 1.    Direct Physical Loss or Damage

First, Plaintiffs contend that they have alleged "direct physical loss or damage" sufficient for coverage under the Policy.[38] Plaintiffs argue that they have adequately alleged that the presence of COVID-19 within the insured premises, along with the Emergency Orders restricting the covered businesses, caused "direct physical loss or damage" as required for business interruption coverage.[39] Plaintiffs claim that the Emergency Orders caused property loss by "restricting the services they could provide and limiting access to their locations."[40] Plaintiffs further argue that the presence of COVID-19 on the insured premises "caused property damage by turning highly occupied buildings and small spaces into tangible virus incubators potentially or actually super-spreading the virus from asymptomatic patrons and employees to building surfaces and building air systems to a steady stream of unsuspecting people who, in turn, become infected and contributed their own COVID-19 virus to that building, or another heavily trafficked

---

[36] *Id.* at 24.

[37] *Id.* at 22–23.

[38] Rec. Doc. 15 at 10–11.

[39] *Id.* at 11.

[40] *Id.*

building, to continue and expand the cycle of infection."[41] Plaintiffs allege that the presence of COVID-19 made their buildings "uninhabitable and unusable" until they were cleaned by Plaintiffs.[42] Plaintiffs contend that they have therefore adequately alleged property loss or damage that "resulted in actual loss of business income and extra expenses" to show coverage under the Policy.[43]

Plaintiffs further claim that Starr's argument that Plaintiffs failed to allege "direct physical loss or damage" at most shows that the language of the Policy is ambiguous, and Plaintiffs argue that ambiguity "should be construed in favor of coverage."[44] Plaintiffs aver that using canons of statutory interpretation, both "direct physical loss" and "damage" within the Policy's phrasing of "direct physical loss or damage" must be given effect.[45] Plaintiffs contend that under the plain meaning and reasonable expectations of insurance policy purchasers, the dictionary definition, and Louisiana precedent, structural damage is not required for there to be a "physical loss."[46] Plaintiffs argue that instead, "the inability to use the property due to a physical condition—here, the actual and/or threatened presence of COVID-19 and the physical limitations on the property as the result of the emergency orders and guidance—is physical loss covered under the Policy."[47]

Further, Plaintiffs seek to distinguish cases in which courts found that losses due to COVID-19 did not constitute "physical loss or damage" by arguing that, unlike such cases, they

---

[41] *Id.*

[42] *Id.* at 11–12.

[43] *Id.* at 12.

[44] *Id.*

[45] *Id.* at 14.

[46] *Id.* at 14–19.

[47] *Id.* at 16.

have adequately alleged both the existence of the Emergency Orders and the presence of COVID-19 on the insured property.[48]

### 2. Contamination Clause

Plaintiffs further argue that the Contamination Clause does not preclude coverage.[49] Plaintiffs contend that this clause is really a "Pollution and Contamination Exclusion Clause."[50] Under the Policy, Plaintiffs claim that "contamination" is not defined; instead, a definition is provided only for "Pollutants or Contaminants."[51] While the definition for Pollutants and Contaminants includes "virus," Plaintiffs argue that 'contamination' is not a defined term and, thus, cannot be read to exclude coverage.[52] Moreover, Plaintiffs argue that to the extent Starr seeks to invoke the "pollution" portion of the exclusion, such exclusion does not apply to the COVID-19 virus under the test set out by the Louisiana Supreme Court in *Doerr v. Mobile Oil Corp.*[53]

### C. Starr's Arguments in Further Support of the Motion to Dismiss

### 1. Direct Physical Loss of Damage

In reply, Starr again argues that "direct physical loss or damage" requires a physical alteration of property.[54] Starr contends that the presence of COVID-19 does not equate to physical

---

[48] *Id.* at 20–27.

[49] *Id.* at 27.

[50] *Id.* at 28.

[51] *Id.*

[52] *Id.* at 28–29.

[53] *Id.* at 30 (citing *Doerr*, 2000-0947 (La. 12/19/00); 774 So. 2d 119, 135, *opinion corrected on reh'g*, 2000-0947 (La. 3/16/01); 782 So. 2d 573)).

[54] Rec. Doc. 22 at 5.

damage, as Plaintiffs have failed to allege how the insured properties were damaged or physically altered.[55] Starr asserts that Louisiana courts have routinely held that the presence of COVID-19 does not constitute physical loss.[56] Starr further argues that Plaintiffs' attempts at distinguishing "damage" and "loss" is unpersuasive and has been rejected by other Louisiana courts.[57] Starr contends that the language of the policy makes clear that Plaintiffs' reading of the Policy to not require any physical alteration is incorrect.[58]

Starr argues that Plaintiffs are likewise not entitled to coverage under the Civil Authority provision of the Policy.[59] Starr highlights that Plaintiffs have not alleged damage to any property within one mile of an insured location, as required by the Civil Authority provision, and have admitted that their business remained open during the pandemic.[60] Additionally, Starr contends that the Policy is not ambiguous.[61]

### 2.   Contamination Clause

In the event the Court does find that Plaintiffs have alleged physical loss or damage, Starr argues that Plaintiffs' claims are still excluded from coverage under the Policy's Contamination Clause.[62] Starr contends that the Clause excludes contamination, including viruses .[63] Starr asserts

---

[55] *Id.* at 6–7.

[56] *Id.* at 7.

[57] *Id.* at 9.

[58] *Id.* at 10–11.

[59] *Id.* at 11.

[60] *Id.* at 11–12.

[61] *Id.* at 12–14.

[62] *Id.* at 14.

[63] *Id.* at 14–15.

that Plaintiffs' attempt at distinguishing between "contamination" and "contaminant" is unpersuasive, and argues that *Doerr* is inapplicable in this case because the "contamination" exclusion is separate and distinct from the pollution exclusion.[64]

### III. Legal Standards

#### A.    *Legal Standard for Rule 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[65] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[66] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[67] "Factual allegations must be enough to raise a right to relief above the speculative level."[68] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[69]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[70] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[71] "While legal

---

[64] *Id.* at 15–16.

[65] Fed. R. Civ. P. 12(b)(6).

[66] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[67] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[68] *Twombly*, 550 U.S. at 556.

[69] *Id.* at 570.

[70] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[71] *Iqbal*, 556 U.S. at 677–78.

conclusions can provide the framework of a complaint, they must be supported by factual allegations."[72] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[73]

The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[74] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[75] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[76] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[77]

**B.     Legal Standard for Interpreting Insurance Contracts Under Louisiana Law**

Under Louisiana law, "an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[78] "The Louisiana Civil Code provides that '[t]he judiciary's role in interpreting insurance

---

[72] *Id.* at 679.

[73] *Id.* at 678.

[74] *Id.*

[75] *Id.*

[76] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[77] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at *2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

[78] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, No. 2002-1637, p. 3 (La. 6/27/03); 848 So. 2d 577, 580). *See also Mark v. Sunshine Plaza, Inc.*, No. 16-455, 2016 WL 6876645, at *2 (E.D. La. Nov. 22, 2016) (Morgan, J.) (quoting *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014)) (quotation marks omitted) (alterations omitted).

contracts is to ascertain the common intent of the parties to the contract' by construing words and phrases 'using their plain, ordinary and generally prevailing meaning.'"[79] "Interpretation of an insurance contract generally involves a question of law."[80]

If the contract is clear and unambiguous and does not have absurd consequences, the court applies the ordinary meaning of the contractual language.[81] If the insurance policy contains ambiguous provisions, the "[a]mbiguity . . . must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions."[82] "An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or [to] achieve an absurd conclusion."[83] "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms."[84]

## IV. Analysis

In the Amended Complaint, Plaintiffs assert claims for breach of contract and a breach of the duty of good faith and statutory duties of the insurer under Louisiana law.[85] Specifically,

---

[79] *Wisznia Co.*, 759 F.3d at 448–49 (quoting *Mayo v. State Farm Mut. Auto. Ins. Co.*, No. 2003-1801, p. 3 (La. 2/25/04); 869 So. 2d 96, 99). *See also* La. Civ. Code arts. 2045, 2047.

[80] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206 (citing *Bonin v. Westport Ins. Corp.*, No. 2005-0886, p. 4 (La. 5/17/06); 930 So. 2d 906, 910).

[81] *Prejean v. Guillory*, 2010-0740, p. 6 (La. 7/2/10); 38 So. 3d 274, 279; *see also Sapp v. Wood Grp. PSN, Inc.*, No. 15-3, 2016 WL 6995897, at *4 (E.D. La. Nov. 30, 2016) (Brown, C.J.).

[82] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 207 (quoting *La. Ins. Guar. Assoc. v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994)).

[83] *Id.* at 208 (quoting *Cadwallader*, No. 2002-1637 at p. 3; 848 So. 2d at 580).

[84] *Id.*

[85] Rec. Doc. 5.

13

Plaintiffs allege that Starr breached its insurance contract with Plaintiffs by denying coverage for losses Plaintiffs sustained as a result of the COVID-19 pandemic.[86] In the instant motion, Starr argues that Plaintiffs' claims should be dismissed for two main reasons: (1) Plaintiffs do not allege "direct physical loss or damage" to the insured property as required for coverage under the provisions of the Policy; and (2) the Policy's Contamination Clause precludes coverage for the alleged losses.[87] Each argument is addressed in turn. In analyzing these issues, the Court applies Louisiana law as required by the *Erie/Klaxon* doctrine.[88]

A.        ***Whether Plaintiffs Have Alleged Direct Physical Loss to the Covered Property***

In the instant motion, Starr argues that Plaintiffs have failed to allege coverage under the terms of the Policy because the Emergency Orders and the presence of COVID-19 on Plaintiffs' property do not qualify as "direct physical loss or damage."[89] In opposition, Plaintiffs contend that they have alleged physical loss or damage through the presence of COVID-19 on their property and on account of the Emergency Orders.[90] Plaintiffs also argue that any ambiguity over whether effects of the pandemic constitute "direct physical loss or damage" should be construed in favor of coverage.[91]

---

[86] *Id.*

[87] *See generally* Rec. Doc. 13.

[88] *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Sorrels Steel Co. v. Great Sw. Corp.*, 906 F.2d 158, 167 (5th Cir 1990) ("A federal court sitting in diversity follows the choice of law rules of the state in which it sits."). "Under the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract." *Woodfield v. Bowman,* 193 F.3d 354, 360 (5th Cir. 1999). Here, the Policy was issued under the Insurance Code of the State of Louisiana. Rec. Doc. 5-1 at 11. In addition, the parties agree that Louisiana law governs the instant dispute. Rec. Doc. 13-1 at 12; Rec. Doc. 15 at 13.

[89] Rec. Doc. 13-1 at 12.

[90] Rec. Doc. 15 at 10–12.

[91] *Id.*

The Policy states, in pertinent part:

This POLICY covers the property insured hereunder against all risks of *direct physical loss or damage* to covered property while at INSURED LOCATIONS occurring during the Term of this POLICY, except as hereinafter excluded or limited.[92]

Both the Business Interruption provision and Extra Expenses provision, relied on by Plaintiffs to show coverage, likewise provide coverage for "direct physical loss or damage."[93] The Policy does not define "direct physical loss or damage." Starr argues that direct physical loss or damage requires a "distinct, demonstrable, physical alteration of the property" or "any actual physical change or injury to the property."[94]

In opposition, Plaintiffs urge a broader interpretation of "physical loss or damage." Plaintiffs argue that they have adequately alleged direct physical loss or damage because the Emergency Orders caused property loss by "restricting the services they could provide and limiting access to their locations" and because the presence of COVID-19 on the insured premises caused property damage by making Plaintiffs' buildings "uninhabitable and unusable" until they were cleaned by Plaintiffs.[95] Moreover, Plaintiffs argue that "physical loss or damage" does not require structural damage.[96] Plaintiffs argue that any ambiguities surrounding the meaning of "physical loss or damage" should be construed in favor of coverage.[97]

However, Plaintiffs' attempts at expanding the definition of "physical loss or damage" to

---

[92] Rec. Doc. 5-1 at 18 (emphasis added).

[93] *Id.* at 35, 58.

[94] Rec. Doc. 13-1 at 14.

[95] Rec. Doc. 15 at 11–12.

[96] *Id.* at 13–17.

[97] *Id.* at 12.

include non-structural damage has already been denied by the Fifth Circuit and other courts in this district. Fifth Circuit precedent is clear that tangible damages are necessary to satisfy the "physical loss or damage" language of a policy, even when a policy provides coverage in cases of physical loss *or* damage. In *Trinity Industries, Inc. v. Insurance Co. of North America*, the Fifth Circuit, applying Louisiana law, found that "the language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper."[98] Similarly, in *Hartford Insurance Co. of Midwest v. Mississippi Valley Gas Co.*, the Fifth Circuit, analyzing a policy that covered only "direct physical loss of or damage to" insured property, found that "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."[99]

Numerous district courts have likewise read this requirement for tangible damages to apply in the context of COVID-19 closure orders. For example, in *Q Clothier New Orleans, LLC v. Twin City Fire Insurance Co.*, the plaintiff-companies sought coverage under an insurance policy which, like the Policy here, required "direct physical loss of or physical damage to property."[100] The plaintiffs argued that they incurred losses due to the mandatory closure of their

---

[98] 916 F.2d 267, 270–71 (5th Cir. 1990).

[99] 181 F. App'x 465, 470 (5th Cir. 2006) (quoting 10A Couch on Ins. § 148:46) (applying Mississippi law); *see also Diesel Barbershop, LLC v. State Farm Lloyds*, No. 20-461, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) ("It appears that within our Circuit, the loss needs to have been a distinct, demonstrable physical alteration of the property.") (internal quotation omitted).

[100] No. 20-1470, 2021 WL 1600247, at *2 (E.D. La. Apr. 23, 2021) (Lemelle, J.).

businesses in response to the COVID-19 pandemic, and asserted coverage under the equivalent business interruption and extra expense provisions of their policy.[101] The district court dismissed the plaintiffs' claims, holding that the plaintiffs' claim that "the pandemic and the governor's stay-at-home order caused damage to its property which cannot be used for its intended use," failed to state a claim for physical loss or damage.[102] The court held that "[a]bsent evidence that [their] property sustained physical and demonstrable alteration, [the plaintiffs'] damages do not meet the Fifth Circuit's definition of covered physical loss or damage."[103] Although *Q Clothier* is not binding on this Court, it serves as persuasive authority, especially given that Plaintiffs' claims here are even weaker than those of the plaintiffs in *Q Clothier*. Here, Plaintiffs' businesses *were not closed* due to the Emergency Orders. Instead, they "remained open as businesses determined essential[] by the governing authorities."[104] Plaintiffs, therefore, did not suffer physical loss or damage due to the Emergency Orders.[105]

While Plaintiffs attempt to distinguish this case by highlighting that COVID-19 was actually *present* on the insured premises, this too has been deemed by courts to be insufficient to allege physical loss or damage. For example, in *Coleman E. Adler & Sons, LLC v. Axis Surplus*

---

[101] *Id.* at *1.

[102] *Id.* at *7.

[103] *Id.*

[104] Rec. Doc. 5 at 14.

[105] Although not binding on this Court, numerous other district courts have likewise held. *See, e.g.*, *Pierre v. Transp. Ins. Co.*, No. 20-1660, 2021 WL 2754651, at *1 (W.D. La. July 1, 2021) ("[T]here is a universe of Louisiana jurisprudence concerning pandemic-related business interruption claims wherein the courts have held that COVID-19 pandemic does not cause direct physical loss of or damage to property."); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F. Supp. 3d 896, 906 (W.D. Tex. 2021) ("Plaintiffs' businesses, moreover, were never shut down as a result of the civil authority orders. They continued to offer take-out services and, subsequently, limited capacity dine-in services. . . . Accordingly, Plaintiffs have not alleged a direct physical loss of their property from the civil authority orders."). In fact, this Court cannot find a single case from within the Fifth Circuit in which a court held differently.

*Insurance Co.*, the plaintiffs, owners of jewelry stores and a reception venue in Louisiana, argued that they were covered under their insurance policy, which required "direct physical loss of or damage to" the insured property, because COVID-19 was present in the insured locations and prevented the use of the property.[106] Another judge in this district rejected the plaintiffs' claims, holding that since the plaintiffs had not "shown any evidence that their properties have suffered from 'physical and demonstrable alteration,' [the plaintiffs had] not met the Fifth Circuit's definition of 'physical loss or damage'" because "COVID-19 harms people, not property."[107] Likewise, in *Q Clothier*, the district court noted that the possible presence of COVID-19 did not constitute "direct physical loss" because "effective health measures such as social distancing, capacity limitations, curbside pickup alternatives, and mask wearing allow for businesses to safely continue operation."[108] Again, while neither case is binding on this Court, each is persuasive given the similarities to this matter.

Finally, Plaintiffs' arguments regarding prior Louisiana cases in which courts found physical loss based on the presence of a non-COVID-19 potentially harmful material on the covered premises are unavailing in the context of COVID-19. For example, Plaintiffs cite to *In*

---

[106] No. 21-648, 2021 WL 2476867, at *1 (E.D. La. June 17, 2021) (Barbier, J.).

[107] *Id.* at *2.

[108] 2021 WL 1600247 at *7. *See also Laser & Surgery Ctr. of Acadiana LLC v. Ohio Cas. Ins. Co*., No. 21-1236, 2021 WL 2702123, at *3 (W.D. La. June 14, 2021), *report and recommendation adopted*, No. 21-1236, 2021 WL 2697990 (W.D. La. June 30, 2021) ("This Court agrees with the foregoing line of cases that the presence of the virus does not constitute physical loss or damage sufficient to trigger coverage."); *Lafayette Bone & Joint Clinic, Inc. v. Transp. Ins. Co.*, No. 21-317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021) ("[E]very district court within the circuit to address the issue has determined that a building's exposure to the coronavirus does not meet this requirement."); *Terry Black's Barbecue*, 514 F. Supp. 3d at 907 ("Even assuming that the virus that causes COVID-19 was present at Plaintiffs' properties, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant."); *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co*., No. 3:20-1348-D, 2021 WL 2936066, at *6 (N.D. Tex. July 13, 2021) ("Even if Vandelay has sufficiently alleged that COVID-19 was present in its restaurants, it has not adequately alleged that COVID-19 caused physical damage or loss.").

18

*re Chinese Manufactured Drywall Products Liability Litigation* to argue that the presence of a potentially injurious material in a building may constitute a covered physical loss.[109] In *Chinese Drywall*, a district judge in the Eastern District of Louisiana found that the plaintiffs had suffered "direct physical loss" when drywall rendered their homes "unusable and uninhabitable" due to "damage to the electrical wiring, appliances, and devices, as well as the ever-present sulfur gases."[110] Here, however, Plaintiffs have not alleged that COVID-19 rendered the insured premises unusable and uninhabitable. Plaintiffs were never forced to close their businesses due to the Emergency Orders, and Plaintiffs have failed to allege any facts supporting the idea that the presence of COVID-19, for which Plaintiffs "performed extensive cleaning and disinfecting of all premises,"[111] made the insured premises useless, as "the virus can be eliminated."[112]

Although it is not clear that Plaintiffs are asserting a claim for coverage under the Civil Authority Provision of the Policy based on the Emergency Orders, to the extent such a claim exists, it too should be dismissed. The Civil Authority Provision provides:

> This POLICY is extended to include, starting at the time of physical loss or damage, the actual loss sustained by the Insured, resulting directly from an interruption of business as covered hereunder, during the length of time, not exceeding the number of days shown under TIME LIMITS stated in the Declarations, when, as a direct result of damage to or destruction of property within one (1) statute mile of an INSURED LOCATION by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil or military authority.[113]

There are several reasons this provision does not apply to Plaintiffs' claims based on the

---

[109] Rec. Doc. 15 at 17–18 (citing *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 832 (E.D. La. 2010) (Fallon, J.)).

[110] 759 F. Supp. 2d at 832–34.

[111] Rec. Doc. 5 at 15.

[112] *Terry Black's Barbecue*, 514 F. Supp. 3d at 907.

[113] *See* Rec. Doc. 5-1 at 36.

Emergency Orders: (i) Plaintiffs were never prohibited from accessing the insured premises as they were deemed essential businesses exempt from COVID-related closures; (ii) Plaintiffs do not state a claim for damage to or destruction of property within one mile of the insured premises; and (iii) Plaintiffs have not claimed that the Emergency Orders were the result of damage to a nearby property.[114] Accordingly, Plaintiffs have not stated a claim for coverage under the Civil Authority provision.

For these reasons, Plaintiffs do not sufficiently allege direct physical loss or damage to the covered properties as required under the relevant provisions of the Policy and therefore, were not covered under the Policy for their COVID-19 related losses.

**B.** **Whether the Contamination Clause of the Policy Excludes Coverage for Plaintiffs'**
**Alleged Losses**

In the alternative, Starr argues that the Contamination Clause of the Policy bars insurance coverage for Plaintiffs' alleged losses because the Clause specifically excludes from coverage losses due to a "virus."[115] In opposition, Plaintiffs contend that the Contamination Clause does not bar coverage.[116] Plaintiffs acknowledge that "Pollutants or Contaminants" is defined by the Policy to include viruses.[117] However, Plaintiffs argue that the Contamination Clause only excludes from coverage "contamin*ation*," an undefined term, not contamin*ants*.[118]

---

[114] *See, e.g.*, *Padgett v. Transp. Ins. Co.*, No. 21-1086, 2021 WL 2559597, at *4 (W.D. La. June 1, 2021), *report and recommendation adopted*, No. 21-1086, 2021 WL 2555377 (W.D. La. June 22, 2021) (holding that a civil authority provision did not provide coverage for COVID-19 "because Governor Edwards's stay-home orders did not prohibit the plaintiffs from accessing their premises and/or because the plaintiffs could not show physical loss or damage.").

[115] Rec. Doc. 13-1 at 21–24.

[116] Rec. Doc. 15 at 28.

[117] *Id.* at 29.

[118] *Id.* at 28–29.

Because the Court finds that Plaintiffs do not adequately allege direct physical loss or damage to the covered properties, it need not determine whether the Contamination Clause precludes coverage in this case. However, assuming *arguendo* that the Court did find that Plaintiffs alleged direct physical loss to the covered premises, the plain language of the Contamination Clause precludes Plaintiffs' claim for coverage.

The Contamination Clause provides:

> This POLICY does not insure against loss or damage caused by or resulting from any of the following regardless of any cause or event contributing concurrently or in any other sequence to the loss:
> 1. contamination;
> 2. the actual or threatened release, discharge, dispersal, migration or seepage of POLLUTANTS at an INSURED LOCATION during the Term of this POLICY unless the release, discharge, dispersal, migration, or seepage is caused by fire, lightning, leakage from fire protective equipment, explosion, aircraft, vehicles, smoke, riot, civil commotion or vandalism. This POLICY does not insure off-premises cleanup costs arising from any cause and the coverage afforded by this clause shall not be construed otherwise.[119]

The Policy later defines "POLLUTANTS or CONTAMINANTS" as:

> The term "POLLUTANTS" or "CONTAMINANTS" shall mean any solid, liquid, gaseous or thermal irritant or CONTAMINANT including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, *virus*, waste, (waste includes materials to be recycled, reconditioned or reclaimed) or hazardous substances as listed in the Federal WATER Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency.[120]

With regard to insurance policy coverage and exclusions, the Louisiana Supreme Court has stated, "[a]lthough the insured bears the burden of proving a policy of insurance affords coverage for an incident, the insurer bears the burden of proving the applicability of an

---

[119] Rec. Doc. 5-1 at 23. Plaintiffs include arguments in the opposition brief about the inapplicability of the second prong of the Contamination Clause concerning pollution. Rec. Doc. 15 at 29–31. Starr does not seek to invoke the pollution portion of the Contamination Clause, so the Court need not analyze this prong.

[120] Rec. Doc. 5-1 at 32 (emphasis added).

exclusionary clause within a policy."[121] "Policy exclusions must be clearly stated. Any ambiguity in an insurance policy's exclusions is construed to afford coverage."[122]

Here, the Contamination Clause unambiguously excludes coverage for losses resulting from COVID-19. It provides that "contamination" is precluded from coverage.[123] Because only the term "contamin*ant*," not contamin*ation*, is defined by the Policy to include a virus, Plaintiffs attempt to draw stark differences between the terms "contamination" and "contaminant." Nevertheless, contamination is defined by Merriam-Webster as "1. a process of contaminating; a state of being contaminated; 2. *Contaminant*."[124] The two terms are synonymous, and it appears clear that the policy, in excluding coverage for contamination, intends to thereby exclude contaminants, such as viruses, as well. Moreover, "[t]he fact that an exclusion could have been worded more explicitly does not necessarily make it ambiguous."[125] Therefore, Plaintiffs' attempts to differentiate between "contamination" and "contaminant" are unavailing.

COVID-19 falls directly into the definition of contaminant and is therefore excluded from coverage. Contaminant is defined under the Policy to include a "virus."[126] The Centers for Disease Control and Prevention ("CDC") defines COVID-19 as "a disease caused by a virus called SARS-

---

[121] *Jones v. Est. of Santiago*, 2003-1424, p. 12 (La. 4/14/04); 870 So. 2d 1002, 1010 (citing *Doerr*, 2000-0947 at p. 5; 774 So. 2d at 124, *modified on other grounds on reh'g*, 00-0947 (La. 3/16/01); 782 So. 2d 573)); *see also Blackburn v. Nat. Union Fire Ins. Co. of Pittsburgh*, 2000-2668, p. 6 (La. 4/3/01); 784 So. 2d 637, 641 ("The insurer bears the burden of proving the applicability of an exclusionary clause within a policy."); *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1252 (La. 1993) ("The insurer has the burden of proving that a loss comes within a policy exclusion."); Russ, 10A Couch on Ins. § 148:52 (3d ed. 2010).

[122] *La. Maint. Servs.*, 616 So. 2d at 1252; *see also Yount v. Maisano*, 627 So. 2d 148, 151 (La. 1993) ("Any ambiguity in an exclusion should be narrowly construed in favor of coverage.").

[123] Rec. Doc. 5-1 at 23.

[124] *Contamination*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/contamination (last visited August 20, 2021) (emphasis added).

[125] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 210.

[126] Rec. Doc. 5-1 at 32.

CoV-2."[127] Therefore, it is clear that COVID-19 falls squarely within the language of the Contamination Clause.

As a final note, Plaintiffs' attempt at invoking the Louisiana Supreme Court's holding in *Doerr v. Mobil Oil Corp.* is unavailing here.[128] In *Doerr*, the Louisiana Supreme Court, considered a total pollution exclusion in an insurance policy and provided factors to determine if the exclusion should apply, including: (i) "[w]hether the insured is a 'polluter' within the meaning of the exclusion," (ii) "[w]hether the injury-causing substance is a 'pollutant' within the meaning of the exclusion," and (iii) "[w]hether there was a 'discharge, dispersal, seepage, migration, release or escape' of a pollutant by the insured within the meaning of the policy."[129] Plaintiffs urge this Court to apply these factors to the Contamination Clause and find that the Clause does not exclude coverage. The Court is not persuaded by this argument. The Contamination Clause includes two distinct subsections. The first subsection excludes "contaminants." This subsection is plainly not a total pollution exclusion like the clause at issue in *Doerr*. While it is arguable that the second subsection of the Contamination Clause is a pollution exclusion, the first subsection of the Clause is distinct and excludes coverage for contamination specifically, not pollution generally.[130] As recognized by Plaintiffs themselves, a virus such as COVID-19 "does not come within the ambit of environmental pollutants that are traditionally the subject of such [pollution]

---

[127] Centers for Disease Control and Prevention, *Frequently Asked Questions*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Basics (last visited August 20, 2021).

[128] 2000-0947; 774 So.2d 119.

[129] *Id.* at 135.

[130] *See Paternostro v. Choice Hotel Int'l Servs. Corp.*, No. 13-0662, 2014 WL 6460844, at *14 (E.D. La. Nov. 17, 2014) (Fallon, J.), *opinion clarified on denial of reconsideration*, No. 13-0662, 2015 WL 471784 (E.D. La. Feb. 4, 2015) (finding that *Doerr* did not apply to bacteria or bacteria exclusions in commercial liability policies).

exclusions."[131] Given that a virus is distinct from pollution, as Plaintiffs recognize, and precluded from coverage under the "contamination" subsection in the Contamination Clause, the Louisiana Supreme Court's analysis in *Doerr* is not applicable here.

## V. Conclusion

Considering the foregoing reasons, Plaintiffs have not alleged any facts to show insurance coverage under the Policy for losses resulting from the presence of COVID-19 on the insured premises and due to the Emergency Orders. Given that Plaintiffs were not covered by the Policy for their COVID-related losses, Plaintiffs' breach of contract, breach of statutory duties, and breach of the duty of good faith necessarily fail.[132] Accordingly,

**IT IS HEREBY ORDERED** that Defendant Starr Surplus Lines Insurance Company's "Rule 12(b)(6) Motion to Dismiss"[133] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this __18th__ day of November, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[131] Rec. Doc. 15 at 30.

[132] Specifically, Plaintiffs' claim for a breach of statutory duties under La. R.S. 22:1973 and La. R.S. 22:1892 is not cognizable without a valid underlying insurance claim. *See Q Clothier*, 2021 WL 1600247 at *11 (citing *Pelle v. Munos*, 2019-0549 (La. App. 1 Cir. 2/19/20); 296 So. 3d 14, 25) ("The penalties authorized by these statutes do not stand alone; they do not provide a cause of action against an insurer absent a valid, underlying insurance claim.").

[133] Rec. Doc. 13.